Good morning, Your Honor. I just can't please the court. Julianna Butler for the petitioner, Ms. Kanchinyan, in this matter. Kanchinyan, thank you. This case involves one where adverse credibility finding of the immigration judge is not supported by substantial evidence. The immigration judge found consistencies in her testimony and her written statement, which, upon review of the record, are not present. He explained those inconsistencies to be material and going to the heart of her claim, whereas Ms. Kanchinyan argues that the heart of the claim was never really reached, which involved her bringing to light a corruption within the government that she had a small part of in her role with the Ministry of Justice in Armenia. Her written declaration, her testimony in court, all of the documents she provided, her daughter's testimony, which was also happening at the court. The daughter is no longer in these proceedings. All are consistent with the claim that she presented to the court. Upon reviewing these documents and her testimony, she claims that it supports and compels a contrary conclusion. The judge's entire belief in her case was that she had an intention to come to the United States and that the entire claim was crafted to deceive everyone, from the consular officials to, I guess, even the immigration judge himself. He starts the decision by explaining that she tried to come to the United States in 2000 and applied for a visa, which was denied. And when that was not successful, she tried again later. He opens his oral decision denying her claim, explaining that it was this that she was really trying to achieve. She was just trying to come to the United States and that she designed a claim, which escalated, as he explained it, starting with her role as a clerk with this audit that she had to perform and then crescendoing to this claim of being raped by police while she was in custody, which he ultimately described as being her last resort to just obtain refugee status. She consistently testified in her statement in court. She never had any facts, details about time, place, individuals that she named, her role in her job at the Ministry of Justice. Everything was consistent. The judge purports to say that she had facts that were not the same, that she was being evasive, that she didn't provide coherent explanations. They are just not present in the record. I cannot find them there. She was consistent throughout. She was not someone who was misrepresenting the information. Most disturbing, I find, in this matter is that one of the elements that caused him to disbelieve her claim was based on evidence he obtained himself. On an independent fact-finding mission, is how I view it, going to Google and seemingly trying to corroborate some information. I'm not sure why he felt he had to do this. It had to deal with her husband's position with the Armenian Table Tennis Federation. Reviewing the record, he then, as he put it, a result obtained from a Google search, found a name to not be consistent nor an address. It's the form and the fact of that method of search which caused great concern in this case. The hearing took place over two days. She walked into court on the first day, testified for quite some time, and at 4.30 p.m., he announces he has this document, presents it to her, and says that she has a chance to rebut it or offer some other evidence. They come back to court. Can I stop you there? Forgive me, but my understanding, there wasn't any opportunity on day one. Is that right? Did he ask her any question about it on day one or just when they resumed? He did ask. He had some questions about was her husband really involved with this organization, and she did explain that he had this role as the vice president and had some names, I believe, were thrown out there. Then, I'm not sure. I don't believe the address was discussed, but that did then come up. Before he pulls out the document, he does go through quite a bit and ask. Who's the president? Who's the president? He has her spell the names of the president as well as the street, has some confusion, doesn't understand why those are differences, asks where she lives and why is that the same street? So some of that happened on the first day before they reconvened, yes? Yes, it did. Okay. And then he brings in this document, sort of pulls it out, sort of a gotcha moment and doesn't let her say anything else and says, we'll discuss this at the next hearing. Even on the record, you can see her counsel saying, relax, we'll talk about this next time, which gets actually to my point about his observation of her demeanor. He claims that she had no emotion about being, testifying about her rapes. But very clearly there, she had an emotion that the attorney was saying, relax, we'll get to that. He doesn't mention that when he was essentially calling her a liar. So at the next hearing, of course, the attorney representing her had obtained a fact document. Again, if you look, same letterhead as the original letter where it had purported to her husband had been terminated. And it says, no, you are correct, this man, he was the president. Dates were in conflict. The document submitted by the immigration judge was outdated and very, it seems very unreliable in just the fact that it's from 2005 talking about a 2003 calendar. I'm not quite sure what calendar, ping pong calendar, I'm not sure. Noting this person's name, which she then in the second hearing does explain, yes, that person was involved previously. But this person that I'm talking about more relevantly currently is in fact the president of this federation. But the judge never considers her, this document that she presents to overcome his, this independent investigation he's done. This document he presents, I believe I pointed out, is not findable today. She has a document signed from the same individual who provided her with information before and the judge does not even discuss it. And I don't believe that is fair at all. I believe that that is quite prejudicial in this case because he took it from that moment and everything after that. He goes through and claims that she's just not being truthful about anything, claiming that she never had this position with the Ministry of Justice. If you look at the record, you see that her workbook, which no one refutes, no one took these documents to, the government had the opportunity to take them to forensics. They did not. So all the documents are evident. Her workbook describes her as a clerk at the Ministry of Justice. And the judge, immigration judge, constantly saying, how do we know she ever had this job? How do we know she ever did this work? Describes her as... Was there any inconsistency about the number of people who attacked her? Was she inconsistent in that regard? Your Honor, I maintain she was not. This, if you, reviewing the record, you clearly see that she describes being attacked by unknown persons. But, as I argue in my brief, there was one person that she recalls doing the physical harm to her, putting a knee into her back, holding a knife to her throat, and saying something to her. The judge argues that she was inconsistently saying, well, there were one and there were two, and I don't know. But she very clearly says, I felt one person, but there may have been others. Did she ever say that she was conducting a financial audit? No, Your Honor. She never, in fact, I don't see her using the word audit. She describes it as a ministerial function of what it appears to be, I'm not familiar with the process in Armenia, but they have a court who's apparently rendering judgments of a financial nature. And they're going down to another court to make sure the judgments are basically put into effect. And she's sent to make sure these things are just happening. My understanding of reviewing the record is that she was reviewing these to make sure that the judgments were being maybe paid, maybe whatever the requirement was there. And she's saying, nope, not always happening. And apparently, the heart of her claim is that maybe one of these judgments that were not being fulfilled involved someone in a political capacity and everybody saying, you cannot reveal that this is not happening. You need to just rewrite this and cover it up. Don't bring stain on our department. You cannot let this person, I guess it's a corrupt individual who needs to be allowed to not fulfill their judgment, sounds like, of a financial nature. I don't believe she was crunching any numbers or having to be an accountant in that sense. And that's why I brought that point up. I only have one other question.  She was, Your Honor. And there were problems throughout the record. It got off to a bit of a rocky start, especially when she started speaking of her intention to immigrate, as the judge said. They seemed to work it out. At one point, they changed interpreters. But you can see throughout, there's different just, the interpreter will pause and say, I don't know how to say this. I need to slow down. The words don't make sense. But they seemed to sort of work it through. And I know at the start of the second hearing, her attorney did request, or maybe the court just put another interpreter in it. They started over, so to speak. But, you know, there are some questions there. But maybe if it's considered, it's perceived inconsistencies, I don't believe. If you consider that bit of translation problem, that she was okay. You have about four minutes left, Your Honor. Is there? I would argue, yes. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Emanuel Palau for the Attorney General here. The immigration judge in this case denied the asylum claim here because he did not believe Ms. Conchinian's account. He cited as bases for his disbelief, her demeanor in testifying about a specific emotional incident. And he also identified a number of inconsistencies and implausibilities in her testimony. Counsel, I apologize. Go ahead. Oh, forgive me. I'm sorry. I just wanted to ask, what's the strongest basis for supporting this adverse credibility finding? I would say three. The demeanor finding, this Court has always said that it owes a special deference to demeanor findings. As long as the immigration judge describes with specificity the basis of that finding here, the immigration judge who hears on a daily basis accounts of persecution and torture by applicants, he cited her lack of demeanor in describing her alleged rapes while in custody. He had the opportunity to observe her over two days of hearings. And in that one point of her testimony, he found it striking that she testified about those incidents, which were obviously emotional and horrific, as he described them, without any show of emotion whatsoever. Don't we have a case, though, or cases that says that's not critical and, indeed, what the judge did here was improper? How can he, particularly as a male, characterize what is an, in quotes, appropriate response to having been raped? I believe what he said was that because he had the opportunity to hear her describe two incidents, one, she was beaten and a knife held her throat. He observed her testify about that. Then he observed her testify about two alleged rapes. He was in the sole position to observe how she testified through two days of hearings. And this Court cannot put itself in his place. Under both the risk and the Singh case, I realize there are a lot of Singh cases, but my understanding is that we've made it pretty clear that when somebody's been sexually attacked like that, that it's not the place of the immigration judge to determine what their demeanor ought to be. People just react differently. It's a horrible crime. Some people are quiet. Some people are reserved. Some people are shamed. It depends on a lot of things. And he's saying she didn't react the way I think she should react. Therefore, I don't believe her. Isn't that contrary to our case law? Well, my only response, Your Honor, would be that he had the opportunity to observe her. And the Court either accepts his finding or it doesn't. Well, he has to back up his finding. That's the point. And I don't think he backed it up in a way that is acceptable under our case law on this point. Let me put the same question a different way, which is that usually when we have, we defer to demeanor findings that are about evasiveness that go to whether or not the person is telling the truth on a particular issue and there's some description. I just view this as a little unusual for the same reason that Judge Smith did, is that when you're describing a rape, it's fundamentally different than giving an incredible account of how you got into the country. Do you recognize or see a difference in that or not? I'm not sure why there's a comparison between that and how you got into the country. All I can say is here, I think the strongest point in favor of this finding is a specific description of her demeanor, as opposed to just a general statement. I understand what the case law says. And all I can say is to further support that is that immigration judges do hear these cases on a daily basis and they do encounter a range of emotions on people testifying about things like torture or rape. And I do believe he has some expertise or some experience in this particular kind of testimony. And that's why this court does allow deference. If the court here feels he didn't provide enough information about the demeanor finding, then it's your prerogative, obviously, to reject his finding on that score. What about the use of the Internet? That was interesting. Usually we are supposed to rely upon evidence that comes before the court. On what basis does the government defend the IJs going into the Internet and coming up with, in quotes, evidence, in quotes, that he used as part of his finding? I think that is not the heart of this case. The immigration judge has a duty to develop fully the factual record. He is the fact finder. So are you saying that he has the ability to go out and just check on the Internet for whatever he wants without counsel for the petitioner being able to see it, question it, cross-examine, anything like that? I think what the immigration judge did here was not very well advised, but it's pretty innocuous. Under the circumstances, there was a momentary surprise in that he presented it to them at the end of a hearing. They had a full opportunity at another subsequent hearing to rebut it, and they did. There's no really surprise here or prejudice. But it went to ñ that was part of his credibility finding, right? She wasn't credible about what her husband was doing. Yes, sir. Yes. Yes. And did the IJ consider her response? We don't know, Your Honor. He did not specifically identify her letter that she submitted in rebuttal. Isn't that problematic? Isn't that problematic if he does his own research and then doesn't allow her to research it? It would have been better if he had identified it, certainly, but we can't assume that the mere fact that he didn't identify it in his decision means he ignored it completely. We don't know. He probably would have been better served to put that in his decision. And I would just point out that there are four or five ñ let me finish answering your question, if I may. There's four or five inconsistencies or implausibilities he identifies. Under this Court's cases, it has to reject every single one in order to ñ I think Judge Christian asked you for your strongest, and you started with demeanor, and then you said you had two others that you would identify as the strongest. So why don't you continue that answer? Okay, fine. I would say that her inconsistent references to the number of her attackers on the March 10th, 2004, it's a clear inconsistency. She went back and forth between identifying one attacker and persons who attacked her. And the fact of the matter is she testified that she didn't see who attacked her or how many there were, and that's all she had to testify to. But instead, she went back and forth and referenced one person versus persons. And I think that's pretty positive. That's your second strongest point? Well, these are all complicated. You've got to be kidding. What's the third? The third is he asked her why she left ñ she testified that she sent her children to Russia for their safety. And she also testified that when she left Armenia, she was told by her so-called persecutors, go to the U.S., go to Russia, we don't care, just get out of Armenia. And so she testified that it was safe for her children in Russia and for her in Russia. Then she testified it was not, and that's why she left Russia to come to the U.S. She did not flee Armenia to the U.S. She and her family were in Russia. And he asked her why did you leave Russia and why did only two of you leave Russia by means of a visitor visa to the U.S. She said because it wasn't safe in Russia. She took her daughter and herself to the United States and left her son and her husband in Russia. A little difference, isn't there, particularly since she'd been raped? Well, if you believe she'd been raped, no. Well, that was her testimony. The testimony, yes. And the judge asked her why didn't all of you come to the U.S. on visitor's visas. And she explained that she was concerned that she sent her daughter there and, of course, she had had this experience herself. Nothing refuted what she said. That's not illogical, is it? It is because she testified that her persecutor said go to Russia. We don't care. If you go to Russia, we're not going to bother you anymore. So she vacillated on whether her reasons for just the two of them coming to the U.S. and she vacillated on whether it was safe for her and her family in Russia, back and forth. And that's the third strongest point. Yes, I have other ones, Your Honor, if you would like to hear them. We've read the I.J.'s decision, obviously, and the brief, so we just wanted to give you the opportunity to highlight the strong points. You don't need to go through all of them if you don't feel you need to, but you control your time. Right. I would say, Your Honor, that in an adversarial situation, as long as the reasons are specific and cogent, the immigration judge does not need to bat a thousand. Every single one does not have to hold water. If the court rejects every single one of them, that's the basis for overturning that decision. However, the immigration judge here laid out his reasons, and some, I believe, were stronger than others, but unless the court thinks that they were all baseless, as well as a demeanor finding, then I would submit that the court should uphold the final decline. Further questions? No, thank you. Thank you, Your Honor. In Roboto, there's one thing I'd like to address that I remember seeing with Mr. Palau's brief. It's my view of the record. She did not go to Russia after this incident. She applied for the visas in Armenia with her daughter and from there passed through Russia. She was not living there and from there decided to make the decision to go to the United States. If we think the credibility determination is not adequately supported, should we remand this case for consideration of the asylum application? Yes, Your Honor. If you remove the Exhibit 6, the Google document, I think that really put the judge in a certain mind frame to make him disbelieve everything else she said. So I'm just trying to get at, forgive me for interrupting, but I'm just trying to get at your request for relief here. Remand for a hearing that will consider the evidence, whether it's a new hearing or an evaluation of this record without that document, which I think is completely unreliable and has misinformation that changed his view on everything. A new hearing would also be beneficial. You've heard our colloquy about demeanor, and it is true that our case law quite rightly says we defer to demeanor findings, with the exception that Judge Smith talked about. So how do you view the demeanor finding in this case in light of your counsel's argument that immigration judges see these type of cases day in and day out and attach significance to the lack of emotion shown? Your Honor, yes, the judge must detail specific cogent reasons for the demeanor. He has no detail about the nonverbal aspects of her demeanor. He only describes her verbal testimony. He describes that she's doing so in a rote, unemotional manner. He says nothing else. He doesn't describe her as maybe her eyes are looking away or she's squirming in her seat or she's delaying a response or acting nervous. He only uses those, he describes it, he's unemotional and it's in a rote manner. There's nothing else about her demeanor, any words used. There's no description. And why don't you address the two other adverse credibility findings that we focused on today, the number of attackers, and you've already talked about the leaving for Russia, so I guess that leaves a number of attackers. Right. Well, and I go through it in my brief. I kind of twice go through everything, and I maintain those again. The number of attackers is she's describing in one sense. She never says there was only one attacker. She says she felt one. When asked how many she saw by the police, she says, I don't know. She doesn't know how many. She was attacked from behind and she knows that somebody was there. It could have been many. She never once said there was just one attacker in one place and then another time says there were several. She's describing different senses. In one, she felt one and she didn't see others. I don't see, when I look through that record, and I do not see how she has at any point said there was one man who came up to me and attacked me or demanded something of me. She doesn't know. She never said that there was just one or several. So you think there's not an inconsistency? I do not, Your Honor. Anything further? All right. Thank you for both of your arguments. The case will certainly be submitted for decision. I appreciate you waiting until the end of the calendar. It's always hard to be the last on the calendar. I appreciate your patience. We will be in recess for the morning.
judges: Thomas, Smith, Christen